UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TYRELL RICHMOND, # 71763-097                                             PETITIONER

V.                                    CIVIL ACTION NO. 3:23-CV-206-DPJ-ASH

WARDEN COIBERT                                                          RESPONDENT

REPORT AND RECOMMENDATION

Tyrell Richmond is a federal inmate who was housed at the Federal Correctional

Complex in Yazoo City, Mississippi, at the time he filed this 28 U.S.C. § 2241 petition.[1] His

petition challenges a determination of guilt in a prison disciplinary proceeding and his resulting

loss of good-conduct time. As explained below, the undersigned recommends that Richmond's

petition be denied and the case be dismissed with prejudice.

I.      Facts and Procedural History

On February 15, 2022, Special Investigative Services Technician Charles Pierce

recovered from Richmond's cell a SanDisk Ultra 16 GB SD Card, a flash memory card, while he

was conducting a routine cell search. Flash memory cards "are not permitted [at FCC Yazoo] for

safety concerns as there is no way to prevent what information is on these storage cards." Sias

Decl. [10-6] ¶ 6. And though BOP policy permits inmates to purchase MP3 players in the

commissary, players purchased there "have been specially manufactured [such that] the memory

card and/or SanDisks in these MP3 players cannot be removed from the players without

damaging and/or destroying the player[s]." Dias Suppl. Decl. [15-1] ¶ 6. Pierce initiated the

---

[1] According to the Bureau of Prisons website, Richmond has since been transferred to a
Residential Reentry Center in Sacramento, California. Jurisdiction over a habeas petition
attaches at the time of filing and is "not destroyed by the transfer of petitioner and accompanying
custodial change." *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014).

disciplinary process by drafting an incident report charging Richmond with Possession of

Hazardous Tool, in violation of BOP's disciplinary code section 108.[2]

On February 16, 2022, Lieutenant Terence Hawkins delivered a copy of the incident

report to Richmond and advised him of his rights. On February 17, 2022, Richmond appeared

before the UDC and admitted that the flash memory card was his. Incident Rpt. [10-2] at 2 ("It

was mine, my cellie had nothing to do with anything. The memory card came out of a new MP3

player."). The UDC referred the incident to the DHO.

The DHO held a hearing on February 24, 2022. Richmond again admitted that the

memory card belonged to him. According to the DHO report, Richmond claimed he "got the

[flash memory card] from another inmate." DHO Rpt. [Dkt. 10-3] at 1. At the conclusion of the

hearing, the DHO found Richmond committed the prohibited act of disruptive conduct most like

possession of a hazardous tool and sanctioned him with disallowance of 41 days of good-time

credit, disciplinary segregation for 7 days, and restriction of phone privileges for 6 months.

---

[2] The prison disciplinary process begins with the issuance of an incident report prepared by a
prison staff person. The report is normally served on the inmate within 24 hours. The next step is
the appointment of an investigating officer (a supervisory-level staff member), who completes an
investigation. The investigation includes a meeting between the investigator and the inmate at
which the inmate is given the opportunity to make a statement. The inmate has the right to
remain silent; however, an adverse inference may be drawn against him for doing so. Upon
completion of the investigation, the investigator records the results on the incident report and
forwards it, along with any other relevant materials, to the Unit Disciplinary Committee (UDC).
If the alleged offense is a low or moderate severity offense, the UDC may make a determination
as to guilt. Where the UDC determines that the inmate did not commit the offense, the UDC
expunges the report from the inmate's file. Alternatively, it may refer the matter to the
Disciplinary Hearing Officer (DHO). Referral to the DHO is automatic for greatest and high
severity offenses. Where the matter is referred to the DHO, the UDC advises the inmate of the
right to choose a staff representative for the hearing and to request witnesses. Following a
hearing, the DHO issues a written decision. The decision may be appealed through the
Administrative Remedy Program. *See* 28 C.F.R. §§ 541.5, 541.7–541.8

Richmond appealed the DHO's decision and then filed this § 2241 petition alleging that the prison disciplinary process violated his due-process rights.

In his petition and his affidavit, Richmond contends the DHO "fabricated the summary of the inmate statement" to the extent it differs from the statement in the incident report. Pet. [ 1] at 6; Aff. [2] at 2. In other words, Richmond disputes he stated the flash memory card came from another inmate (and perhaps that the DHO report fails to mention the card originated in a commissary-purchased MP3 player). Richmond also complains the "DHO refused to contact [the] commissary supervisor to confirm if the SD Card came from the MP3 Player." Pet. [1] at 6. He contends that the DHO's "failure to present evidence to prove the petitioner innocent was out of bad faith and an intent to deprive Petitioner of his right to a fair disciplinary hearing." *Id.*

II.    Analysis

A prisoner facing a loss of good-time credits is entitled to due process in the form of:

> (1) written notice of the charges at least 24 hours prior to a disciplinary hearing; (2) an opportunity "to call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) "a written statement by the factfinders as to the evidence relied on and the reason for the disciplinary action."

*Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 564–65 (1974)).

Richmond does not contend that he was denied written notice, an opportunity to present evidence, or a written statement explaining the DHO's decision. He does, however, assert that the disciplinary proceeding was unfair because (according to Richmond) the DHO altered Richmond's statement to reflect that he obtained the flash memory card from another inmate (as opposed to his own commissary-purchased MP3 player). He also contends that the DHO failed to investigate what Richmond believes is exculpatory evidence: MP3 players from the

commissary contain flash memory cards. But he stops short of claiming he made any request to call the commissary supervisor to testify (or that any such request was refused).

The Court does not need to resolve these factual disputes because they are immaterial. In addition to identifying a due process violation under *Wolff*, a prisoner seeking relief from that violation in a § 2241 habeas petition must also demonstrate he was prejudiced by the violation. *Najjar v. Yusuff*, 81 F. App'x 815, 816 (5th Cir. 2003) (citing *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995)). In other words, Richmond must show the outcome of the disciplinary proceeding would have been different absent the alleged due process violation. *See Mascitti v. Thaler*, 416 F. App'x 411, 415 (5th Cir. 2011) ("[E]ven in the event of a constitutional violation, a habeas petition may not be granted unless the petitioner demonstrates that he was prejudiced by the violation." (citing *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997))). As explained below, assuming the flash memory card originated with Richmond's purchase (and disassembly) of an MP3 player purchased at the commissary—as Richmond claims—the DHO's decision should still be affirmed. Thus, the defects Richmond alleges before the DHO (to the extent they are even due process violations), caused him no actionable prejudice. *See id.* ("We need not reach whether [petitioner] received constitutionally adequate notice of the charges because [petitioner] has presented no evidence that he was prejudiced by any deficiency.").

A court's review of a DHO's decision is limited by the deferential standard of *Superintendent, Massachusetts Correctional Institution v. Hill*, which requires only that there be "some evidence" to show that the inmate committed the offense. 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion

reached by the [DHO.]" *Id.* at 455–56. If there is "some evidence" to support the decision, it must be upheld even if the evidence is "meager." *Id.* at 456. Stated another way, "prison disciplinary proceedings will be overturned only where there is *no evidence whatsoever* to support the decision of the prison officials." *Kapordelis v. Myers*, 16 F.4th 1195, 1200 (5th Cir. 2021) (quoting *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994)) (emphasis in *Kapordelis*).

The DHO found Richmond violated section 199 of BOP's disciplinary code, which prohibits "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act." 28 C.F.R. § 541.3, Table 1 (explaining section 199 is used when another Greatest severity charge is inaccurate and that "[t]he offending conduct must be charged as 'most like' one of the listed [g]reatest severity prohibited acts"). Richmond was charged with disruptive conduct most like that covered by section 108, which prohibits possession "of a hazardous tool." *Id.* Section 108 defines "hazardous tools" as those

> most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device.

*Id.*

Richmond does not dispute that he possessed the flash memory card. Instead, he argues that he should not be punished for possessing a flash memory card that came out of an MP3 player he purchased at the commissary. Richmond says the MP3 player broke about a week before the February 15, 2022 search of his cell; when it broke he "discover[ed] it had a[n] SD card in it." Regional Admin. Remedy Appeal [1-3] at 1. According to Respondent, once Richmond took the MP3 player apart and discovered its flash memory card, it became "altered

personal property," which is considered contraband under an applicable BOP Program

Statement. Sias Suppl. Decl. [15-1] Attach. A (Program Statement) at 9.

A number of courts have "held that the prohibition against possessing 'hazardous tools'

includes devices such as thumb drives, MP3 players, iPods, and device chargers." *Mathews v.*

*Warden*, 630 F. Supp. 3d 755, 761 (W.D. Va. 2022) (collecting cases); *see also Flannagan v.*

*Tamez*, 368 F. App'x 586, 587 (5th Cir. 2010) (affirming denial of habeas relief over disciplinary

proceedings under same sections where inmate found in constructive possession of a cellphone

and charger). This is so "because [electronic communication devices] 'and related components

are frequently used by inmates to circumvent inmate phone monitoring, and to assist inmates in

escaping from prison by keeping inmates informed of special counts and staff locations, which

poses a threat to the security of the institution, its inmates[,] and staff.'" *Evans v. Tamez*, No. 11-

317, 2012 WL 2160080, at *7 (S.D. Tex. Apr. 12, 2012) (quoting *Douglas v. Zickefoose*, No. 11-

406, 2012 WL 266364, at *15 (D.N.J. Jan. 27, 2012)), *report and recommendation adopted*,

2012 WL 2159915 (S.D. Tex. June 13, 2012); *accord Angel v. Dep't of Justice*, No. 15-7514,

2016 WL 3545097, at *4 (D.N.J. June 28, 2016) ("An MP3 player with recording capabilities

and memory could be used to record and save messages, which in turn could be used for

planning escapes or planning other disturbances in the institution.").

Like those courts, the undersigned agrees that the BOP's treatment of flash memory cards

as hazardous tools is appropriate. Likewise, the decision finding Richmond guilty of section 199

disruptive conduct most like a section 108 offense for possession of a hazardous tool was

appropriate. Richmond's MP3 player and its flash memory card became contraband when he

took apart the player to reveal the card. The DHO's decision was supported by more than "some

evidence" that Richmond possessed contraband most like a hazardous tool. *Hill*, 472 U.S. at 456.

III.    Conclusion and Recommendation

The undersigned therefore recommends that Richmond's petition be denied and this case dismissed with prejudice.

IV.    Notice of Right to Object

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy[3] of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 22nd day of April, 2025.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE

---

[3] When a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).